**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TAHISHA STYRON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EDGEWELL PERSONAL CARE COMPANY; EDGEWELL PERSONAL CARE BRANDS, LLC; and EDGEWELL PERSONAL CARE LLC,<br><br>Defendants. | CASE NO: 1:26-cv-6639<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Tahisha Styron ("Plaintiff") brings this Class Action Complaint against Defendants Edgewell Personal Care Company, Edgewell Personal Care Brands, LLC, and Edgewell Personal Care LLC (collectively "Defendants" or "Edgewell"), individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**INTRODUCTION**

1.      This lawsuit arises from Edgewell's systematic practice of making affirmative, false representations on the packaging of its women's Schick Hydro Silk razors (the "Women's Razors" or "Class Products"[1]) that led reasonable consumers to believe that they were purchasing

---

[1] The Women's Razors include, but are not limited to, the razor cartridges contained within the Schick Hydro Silk line, including the Hydro Silk 3, Hydro Silk Ultra-Sensitive, Hydro Silk Ultimate Pubic Skin Protection, and the Hydro Silk Advanced Moisture. Plaintiff reserves the right to amend or modify this definition after discovery.

a product specifically engineered for women's bodies that contained specialized features absent from Edgewell's corresponding men's razor line. Those representations were false.

2.      Edgewell uniformly markets and advertises its Women's Razors as uniquely designed for women's bodies.

3.      For example, the Hydro Silk 3 razor cartridge packaging[2] conveys that the product is specially designed to address women's distinct shaving needs:





---

[2] Images available at https://a.co/d/0giaWQ0H (last accessed July 14, 2026).

4.      Likewise, the Hydro Silk Ultra Sensitive razor cartridge packaging[3] advertises 5 "Curve Sensing® Blades," as part of the "Hydro Silk® Difference":





---

[3] https://a.co/d/06i7lcgU (last accessed July 15, 2026).

5.      Through prominent claims that the razor is "ideal for bikini & underarm zones"; features a "slim 3-blade design" for "tricky zones"; incorporates "Curve Sensing® Blades" for the "underarms, legs and bikini"; and includes a 40-degree pivot that "flexes around your curves," the packaging represents that the product's physical design and engineering were specifically tailored to the contours of women's bodies and the areas women commonly shave.

6.      These express design claims, reinforced by the product's distinctly feminine "Hydro Silk" branding and visual presentation, communicate more than mere gender-targeted marketing: they convey that the product itself was purpose-built for women.

7.      What Edgewell fails to disclose is that its Women's Razors are substantially similar, if not materially identical to its Schick Hydro razors (the "Men's Razors"), which are marketed primarily to men. The Men's Razors, which do not include the marketing claims at issue in this litigation, are sold at a uniformly lower price point.

8.      Accordingly, Plaintiff and Class Members paid a price premium for the Women's Razors based on Edgewell's deceptive marketing, which was intentionally designed to convince reasonable consumers that the products were uniquely engineered for women's shaving needs.

9.      Edgewell's deception does not occur in isolation. It is part of a well-documented and pervasive commercial phenomenon: the systematic charging of higher prices for consumer products marketed to women than for functionally equivalent products marketed to men — what researchers, legislators, and regulators have come to call the "Pink Tax." Study after study has found that women, on a widespread basis, are charged more than men for what are functionally the same products or services. For example, a typical California woman pays about $2,381 more annually for the same goods and services than her male counterpart.[4] According to the Pew

---

[4] https://sjud.senate.ca.gov/sites/sjud.senate.ca.gov/files/2.18.2020_sjud_gender_pricing_info_hearing_background_paper.pdf (last accessed July 1, 2026).

Research Center's 2024 analysis, women already earn 85 cents for every dollar earned by men.[5] The Pink Tax compounds that inequality every time a woman reaches for a razor.

10.    Edgewell's misconduct has caused Plaintiff and putative Class Members to suffer injury in fact, including economic damages. Accordingly, Plaintiff brings this suit to halt Edgewell's unfair and deceptive trade practices.

11.    Plaintiff seeks restitution, injunctive relief, actual damages, punitive damages, and other equitable remedies for themselves and the proposed classes.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more putative Class Members; (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs; and (iii) there is minimal diversity because Plaintiff and Defendants are citizens of different states. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

13.    This Court has personal jurisdiction over the Defendants because they transact business in this State and District, have substantial aggregate contacts with this State and District, engaged in conduct that has and had a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons in this State and District, and because they purposefully availed themselves of the laws of the State of New York, and further because Plaintiff purchased the Women's Razors in this State and District.

---

[5] https://www.pewresearch.org/short-reads/2025/03/04/gender-pay-gap-in-us-has-narrowed-slightly-over-2-decades/ (last accessed July 1, 2026).

14. In accordance with 28 U.S.C. § 1391, venue is proper in the Southern District of New York because this district is where a substantial part of the conduct giving rise to Plaintiff's claims occurred, where Defendants transact business, where Plaintiff resides, and where Plaintiff purchased the Women's Razors that are the subject of this action.

## PARTIES

15. At all relevant times, Plaintiff has resided in Bronx County, New York.

16. Defendant Edgewell Personal Care Company ("Edgewell Company") is incorporated under the laws of Missouri and maintains its headquarters and principal place of business in St. Louis, Missouri.

17. Defendant Edgewell Personal Care Brands, LLC ("Edgewell Brands") is a Delaware Limited Liability Corporation with its principal place of business in Shelton, Connecticut. Edgewell Brands is a wholly-owned subsidiary of and/or 100% controlled by Edgewell Company.

18. Defendant Edgewell Personal Care LLC ("Edgewell LLC") is a Delaware Limited Liability Corporation with its principal place of business in Shelton, Connecticut. Edgewell LLC is a wholly-owned subsidiary of and/or 100% controlled by Edgewell Company.

19. At all relevant times, each and every Edgewell defendant was acting as an agent and/or employee of each of the other Edgewell Defendants, and was the owner, agent, servant, joint-venturer and employee of each of the other and each was acting within the course and scope of its ownership, agency, service, joint venture and employment with the full knowledge and consent of each of the other Edgewell Defendants. On information and belief, each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Edgewell Defendants.

20.     Edgewell is a publicly traded company and a leading manufacturer and distributor of personal care products, including razors, shaving gels, skin care products, and other grooming items sold under well-known brand names including Schick.

21.     Edgewell owns the "Schick" brand and, under that brand name, manufactures, markets, distributes, and sells razor products throughout the United States, including in New York.

22.     Edgewell sells its products through multiple channels, including through retail partnerships with major national and regional retailers such as Walmart, Target, Amazon, CVS, Walgreens, and grocery chains.

23.     As the manufacturer and distributor of the products at issue, Edgewell controls the pricing of its products through manufacturer's suggested retail prices ("MSRP"), minimum advertised price ("MAP") policies, pricing monitoring and enforcement mechanisms, authorized reseller agreements, and direct sales, and is therefore responsible for the gender-based pricing discrimination complained of herein. The pricing disparity originates upstream at the manufacturer level, as confirmed by the brand's historic direct-to-consumer pricing[6] and MSRP structure.

## FACTUAL ALLEGATIONS

24.     Edgewell is a consumer goods manufacturer which owns the "Schick" brand, one of the leading razor brands in the United States. Edgewell manufactures, markets, distributes, and sells personal care products, including razor systems, under the Schick brand name.

---

[6] Schick does not currently sell its products directly to consumers, but at least as recently as 2024 Schick sold its products on its official website in addition to selling them through other traditional retail channels. Based on information and belief, as further detailed herein, Schick's retail pricing on its own website during that time was higher for the Women's Razors and confirms Edgewell's intent to charge a price premium for the Women's Razors.

25.     Edgewell acquired the Schick brand in 2003. At the time of acquisition, the brand was the second largest marketer and manufacturer of men's and women's wet shave products in the world.[7]

26.     Edgewell manufactures and distributes Schick razor systems internationally, though its primary markets are in the United States, Canada, Japan, and the U.K. Edgewell currently holds the number two global market share position in wet shaving.[8]

***The Women's Razors' Uniform Marketing***

27.     The Women's Razors are an important component of Edgewell's business.

28.     Throughout its advertising and marketing, Edgewell consistently presents the Women's Razors as a technologically specialized shaving system developed to address women's unique shaving needs through proprietary design features and specialized engineering.

29.     In Edgewell's own words, its Hydro Silk line of products are for "today's woman," and are "designed to get over every curve to every hair and hard-to-reach spot for salon-quality results from head to toe."[9]

30.     Across its website, product packaging, and retailer product pages, Edgewell's marketing consistently focuses not on the ordinary function of shaving hair, but on providing "salon-quality," "expert-level" tools for a "gentle" shaving experience designed specifically for a women's "curves" and their "tricky zones," such as underarm and bikini areas.

31.     Collectively, Edgewell's representations communicate that consumers are not simply purchasing a razor, but a technologically advanced system specifically engineered to provide benefits uniquely suited to women's bodies and shaving needs.

---

[7] https://ir.edgewell.com/~/media/Files/E/EdgeWell-IR/annual-reports/2025-10-k.pdf (last accessed July 1, 2026).
[8] *Id.*
[9] https://edgewell.com/pages/our-brands (last accessed July 21, 2026).

32. These uniform marketing claims include, but are not limited to, the following representations which appear uniformly on the Schick website, the Women's Razors' packaging, and the product pages of its authorized retailers (collectively, the "Challenged Marketing Claims"):

   a. "Hydro Silk delivers professional-quality results for your unique hair-removal needs."[10]

   b. "Experience expert-level precision, control and care at home from head to toe."[11]

   c. "Enjoy expert-level care for sensitive skin with Schick Hydro Silk Sensitive Razor."[12]

   d. "5 curve-sensing blades have a skin-protection coating for a close shave and Hydra-Boost serum hydrates and protects from irritation for our smoothest glide."[13]

   e. "5 curve sensing blades that follow every part of your body (even your knee)"[14]

   f. "For a shave that follows all your curves"[15]

   g. "Keep your bikini area smooth with Schick Hydro Silk."[16]

   h. "5 Curve Sensing® blades for a close shave."[17]

   i. "Get expert-level care at home."

   j. "Our Schick Hydro Silk 5 Moisture Razor Refills have 5 Curve-Sensing blades with skin-protection coating and unique skin guards that follow the natural contours of your body for ultimate closeness and gives you control over your shave."[18]

   k. "Our Closest Shave"[19]

   l. "Expert Level Smooth"[20]

---

[10] https://www.schick.com/pages/womens-landing-page (last accessed July 1, 2026).
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] https://www.schick.com/pages/hydro-silk (last accessed July 1, 2026).
[15] *Id.*
[16] *Id.*
[17] https://a.co/d/08eSD7wx (last accessed July 15, 2026).
[18] https://a.co/d/0eZdEobP (last accessed July 15, 2026).
[19] *Id.*
[20] *Id.*

m. "Slimmer design ideal for bikini and underarm"[21]

n. "40-degree pivoting cartridge flexes around your curves"[22]

o. "Slim 3-blade design for a close, comfortable shave, especially for your tricky zones."[23]

p. "[W]ith a slimmer, pivoting cartridge design that is ideal for smaller areas and tricky zones like underarms and the bikini area."[24]

33. Reasonable consumers fairly understand the Challenged Marketing Claims to mean that the Hydro Silk Products are uniquely designed for women's shaving needs. This understanding is reinforced by Edgewell's repeated promises of "expert-level," "professional-quality," "salon-quality," and "dermatologist-tested" results.

34. The "Hydro Silk" product name, in conjunction with its distinctly feminine branding and color scheme, only serve to reinforce a consumer's impression that the Women's Razors are designed specifically for women.

35. Upon information and belief, Edgewell works with retailers to ensure that the Women's Razors are placed in the "women's" section of personal care products, while the Men's Razors are placed in the "men's" section of personal care products. This gender-segregated placement strategy makes clear Edgewell's target audience for the Women's Razors, in addition to making it more difficult for consumers to comparison shop between substantially similar products.

***Edgewell's Deceptive and Misleading Advertising***

36. In reality, the Women's Razors are substantially similar, if not functionally identical, to Edgewell's corresponding Men's Razors that are sold at a lower price.

---

[21] https://a.co/d/0dCj0Yl2 (last accessed July 15, 2026).
[22] *Id.*
[23] *Id.*
[24] *Id.*

37.     Each feature Edgewell marketed as women-specific—such as Curve Sensing blades and a slimmer design for shaving bikini and underarm areas—has a direct functional equivalent in the Men's Razors. Had Edgewell disclosed this fact, a reasonable consumer would have understood that no engineering distinction justifies the Women's Razors' price premium.

38.     Gender-segregated retail placement ensured that consumers had no practical opportunity to make this comparison at the point of sale.

39.     Accordingly, a reasonable consumer reasonably believes that the Women's Razors are specially engineered in a way that the Men's Razors are not, despite the fact that both products use similar, if not identical, blade systems, lubrication, and other integrated technology. The only difference is the marketing language Edgewell uses to advertise these benefits to consumers.

***Similarities Between the Women's Razors and Men's Razors***

40.     The Women's Razors and Men's Razors utilize a substantially similar design comprised of disposable razor cartridges that attach to a reusable handle.[25]

41.     The Women's Razors and Men's Razors are both manufactured by Edgewell using centralized razor manufacturing facilities that employ shared blade grinding and cartridge assembly.

42.     The manufacturing process for the Women's Razors and Men's Razors is substantially similar, involving the same core steps: blade grinding and sharpening using identical equipment and specifications, cartridge assembly with multiple blades placed parallel to each other in plastic and metal housings, application or injection of lubricating strips or gels formulated with substantially similar ingredients (e.g., aloe and Vitamin E), and assembly with handle attachment mechanisms.

---

[25] The razor handles are not included in the definition of the Class Products.

43.     The Hydro Products are all manufactured using the Schick Hydro razor platform, which is covered by patents[26] governing multi-blade cartridge systems, skin guard protection structures, lubrication gel reservoir systems, and pivoting cartridge head mechanisms. These patents apply broadly across the Hydro Products family without distinction between gender-marketed versions. The absence of separate patents for the Women's Razors' architecture confirms that both razors use materially identical engineering and functional technology.[27]

44.     Both the Women's Razors and the Men's Razors include three- or five-blade cartridge systems, stainless steel blades, lubrication strips or gel reservoirs, skin guard structures, and pivoting cartridge heads.

45.     The blades in both the Women's Razors and Men's Razors are placed parallel to each other and housed in plastic and metal razor heads, utilizing substantially similar construction and assembly methods.

46.     The Women's Razors and Men's Razors serve the identical purpose of removing unwanted hair while protecting sensitive skin.

47.     The Women's Razors and Men's Razors both utilize materially identical materials in manufacturing, including stainless steel blades housed in polymer cartridges.

48.     The Women's Razors and Men's Razors both include conditioning or lubricating strips formulated with ingredients such as aloe and shea butter to provide glide and skin protection during shaving.

49.     The Women's Razors and Men's Razors both include skin guard structures— protective borders on the razor cartridge designed to protect sensitive skin and reduce irritation.

---

[26] https://patents.google.com/patent/USD848069S1/en (last accessed July 1, 2026).
[27] *See, e.g.,* https://patents.google.com/patent/US8079147B2/en (last accessed July 1, 2026).

50. The Women's Razors and Men's Razors both include pivoting cartridge heads that allow the blade assembly to adjust to body contours during use.

51. The Women's Razors and Men's Razors both attach to their respective handles in substantially the same manner, utilizing similar connection mechanisms.

52. A side-by-side comparison of the Women's Schick Hydro Silk 3-blade cartridge[28] and the Men's Schick Hydro Ultra-Sensitive 3-blade cartridge[29] illustrate the visual similarities between the two products:

 

53. The most visually conspicuous differences are between the Women's Hydro Silk Ultra-Sensitive 5-blade cartridge[30] and the comparable Men's Hydro Sensitive 5-blade cartridge[31]:

 

54. The Women's Razor has a large, rounded plastic housing that extends around the perimeter of the women's blade assembly. That housing, however, is not itself a blade, cutting

---

[28] https://a.co/d/0eaZn89p (last accessed July 1, 2026).
[29] https://a.co/d/077LvnTT (last accessed July 1, 2026).
[30] https://web.archive.org/web/20250907145135/https://www.schick.com/products/hydro-silk-5-sensitive-care-refills-6ct (last accessed July 15, 2026).
[31] https://web.archive.org/web/20250827073638/https://www.schick.com/products/hydro-sensitive-refill (last accessed July 15, 2026).

edge, or blade-level skin-protection feature, and it does not cut or remove hair. The actual shaving function is performed by the cartridge's blades and associated components that interact with the skin and hair at the shaving plane. Although the outer housing may serve ancillary purposes, such as supporting or enclosing the cartridge assembly, its mere presence does not establish that it materially improves the razor's ability to cut hair or that women require such a structure to obtain a close or comfortable shave.

55.    The plastic housing may make the Women's Razors look more protective, specialized, and adapted to the female body, but the conspicuous visual presence should not be confused with the technology that actually cuts hair or is assumed, without evidence, to improve access to the "tricky zones" Edgewell invokes to market the product.

56.    Indeed, that premise presents an apparent contradiction: if surrounding the blades with a larger housing materially improves a razor's ability to navigate curved and difficult-to-reach anatomy, it is unclear why the same design principle is absent from the comparable Men's Razors even though men likewise shave highly contoured and difficult-to-reach areas, including the jawline, chin, neck, and areas around the nose and mouth.

57.    Furthermore, if the objective is access to tight spaces, as Edgewell's marketing claims, an enlarged structure extending beyond the cutting surface may itself be counterproductive. As a matter of geometry, a larger perimeter may limit how closely the blades themselves can approach boundaries, recesses, or other confined areas. Extending the cartridge structure beyond the cutting edges necessarily increases the physical footprint of the razor head.

58.    Even when the Women's Razors and Men's Razors look different, appearance should not be confused with function. The visual differences appear to amplify the perception of

gender-specific engineering without necessarily reflecting a material difference in core shaving performance.

59.     Because the Women's Razors and Men's Razors are both designed and manufactured using the same materials, parts, and production methods, there is no evidence of materially different manufacturing costs.

60.     Upon information and belief, because the design, materials and manufacture are the same, there are no additional supplier or transportation costs associated with the Women's Razors versus the Men's Razors.

61.     Available marketing materials, consumer research, and product testing sources confirm that any differences between the Men's and Women's Razors relate to marketing presentation, rather than underlying blade technology or performance. No scientific or industry evidence suggests that the Women's Razors provide superior functional benefits, or contain superior materials, that would justify a price premium.

***Edgewell Charges Uniformly Higher Prices for the Women's Razors***

62.     Despite the fact that the products are substantially similar, the Women's Razors are sold at a consistently higher retail price than the Men's Razors.

63.     As recently as August 2025, Edgewell sold the Hydro Products directly to consumers. For a 6-count package of 5-blade refill cartridges, the Women's Razors were sold at a **26.7% price premium** on the official Schick website.

| Hydro Sensitive 5-blade- 6 ct (Men's)[32] | $14.99 **($2.50/unit)** |
|---|---|

---

[32] https://web.archive.org/web/20250827073638/https://www.schick.com/products/hydro-sensitive-refill (last accessed July 6, 2026).

| | |
|---|---|
| Hydro Silk Ultra Sensitive 5-blade- 6 ct (Women's)[33] | $18.99 **($3.17/unit)** |

64.    Likewise, a nearly identical **26.3% price premium** is observable on Edgewell's 2025 direct-to-consumer pricing for its 3-blade razors[34]:

| | |
|---|---|
| Hydro Ultra Sensitive 3-blade- **5 ct** (Men's)[35] | $9.89 **($1.98/unit)** |
| Hydro Silk 3-blade- **4 ct** (Women's)[36] | $9.99 **($2.50/unit)** |

65.    A survey of current retail pricing across at Target and Walmart—two of Schick's largest authorized retailers—confirms this price premium. On July 1, 2026, the Women's Razors were sold at a **13.4% price premium** on average:

---

[33] https://web.archive.org/web/20250907145135/https://www.schick.com/products/hydro-silk-5-sensitive-care-refills-6ct (last accessed July 1, 2026).

[34] Notably, the 3-blade razors were not sold in identical quantities on the Schick website, thus Plaintiff compares unit-level pricing for this model.

[35] https://web.archive.org/web/20250810095100/https://www.schick.com/products/hydro-ultra-sensitive-refill (last accessed July 15, 2026).

[36] https://web.archive.org/web/20250315142031/https://www.schick.com/products/hydro-silk-3-refills-4ct (last accessed July 15, 2026).

| Product | Retailer | Current Price |
|---|---|---|
| Hydro 5 Sensitive- 6 ct (Men's) | Target[37] | $14.99 ($2.50/unit) |
| | Walmart[38] | $14.97 ($2.50/unit) |
| Hydro Silk Ultra-Sensitive- 6 ct (Women's) | Target[39] | $16.99 ($2.83/unit) |
| | Walmart[40] | $16.97 ($2.83/unit) |

66.     Edgewell cannot rely on purported differences in the Hydro Products' handle shapes or any other product configurations to justify the price premium charged for the Women's Razors.

67.     The consistent price premium across diverse retail channels and geographic markets throughout the United States demonstrates that Edgewell's pricing policies, rather than independent retailer decisions, drive the manufactured price premium.

68.     Data from authorized retailer Amazon[41] indicates that thousands of the Hydro Products are sold each month through that retailer alone. Accordingly, Edgewell has likely generated millions of dollars in revenue from the unjustified price premium charged on the Women's Razors.

***Edgewell's Pricing Decision-Making***

---

[37] https://www.target.com/p/schick-hydro-sensitive-razor-blade-refills-8211-men-39-s-razor-refills-razor-blades-for-men-trial-size-8211-6-razor-refills/-/A-89551869#lnk=sametab (last accessed July 1, 2026).
[38] https://www.walmart.com/ip/Schick-Hydro-Sensitive-Mens-Razor-5-Blade-Refills-6-Ct-Value-Pack-Sensitive-Skin-Razor/5005029886?classType=VARIANT&athbdg=L1102&from=%2Fsearch&sid=07037462-843e-433a-88f4-9ddb61512a9d (last accessed July 1, 2026).
[39] https://www.target.com/p/schick-hydro-silk-5-sensitive-women-razor-blade-refills/-/A-79176429?preselect=51169495#lnk=sametab (last accessed July 1, 2026).
[40] https://www.walmart.com/ip/Schick-Hydro-Silk-Sensitive-Womens-Razor-Blade-Refills-6-ct-5-Blade-Razors-for-Women-Sensitive-Skin/189991088?from=%2Fsearch&sid=a1b53f5b-c550-4a6f-8d51-717ce7d5c72b (last accessed July 1, 2026).
[41] https://a.co/d/0bllpqMP (last accessed July 1, 2026).

69. The pricing strategies, policies, and decisions that resulted in the unlawful price premium complained of herein were formulated, approved, and implemented by Edgewell executives and employees.

70. In investor communications and public filings, Edgewell has emphasized brand value preservation, premium positioning, and disciplined pricing execution. Such statements reflect a corporate strategy centered on maintaining price integrity in retail channels.

71. Accordingly, the deceptive, unfair, and unlawful business practices that form the basis of this lawsuit originated with Edgewell's corporate decisions to design, price, market, and distribute substantially similar razors at different prices based on false, misleading, or otherwise deceptive advertising, including *inter alia* the Challenged Marketing Claims, as detailed herein.

72. Edgewell's historic direct-to-consumer pricing confirms this fact.

73. These pricing decisions were then implemented nationwide, including in New York, through Edgewell's comprehensive pricing control mechanisms. Based on information and belief, those pricing control mechanisms include established MSRP and MAP policies imposed on authorized retailers.

74. Although retailers exercise discretion over the final prices charged to consumers, that discretion does not sever the causal relationship between Edgewell's wholesale pricing and the systematic retail premium paid for the Women's Razors. Retailers purchase products at wholesale and ordinarily set retail prices in light of their acquisition costs and desired margins. Based on information and belief, Edgewell charges retailers more for the Women's Products than for materially comparable Men's Products at the wholesale level. Accordingly, Edgewell embeds a price differential into the products before they ever reach the retail shelf.

75.    Retailers may vary the precise amount of that differential through their own margins, promotions, and pricing strategies, but they cannot eliminate the economic reality that the Women's Products enter the distribution chain with a higher cost basis. Accordingly, the resulting retail premium is not merely the product of independent retailer pricing decisions; it is the foreseeable and intended downstream consequence of Edgewell's own differential wholesale pricing.

***Edgewell's Knowledge***

76.    Edgewell understands that women value products purportedly designed specifically for women's bodies and skin, and intentionally designed, branded, and marketed the Women's Razors to capitalize on that belief by emphasizing specialized engineering, female-specific anatomy, and skin-care technology.

77.    Edgewell did not arrive at the challenged representations accidentally. Before launching Hydro Silk, Edgewell's predecessor conducted seven years of research, including hundreds of focus groups and testing among thousands of women.[42] Through that research, the company identified women's beliefs and concerns regarding shaving, skincare, moisturization, beauty, confidence, bodily contours, and difficult-to-reach areas. Edgewell then deliberately developed Hydro Silk to capitalize on those beliefs, expressly positioning shaving as part of the "female skincare ritual" and designing the product, packaging, claims, colors, and aesthetics to communicate that Hydro Silk offered specialized skincare and shaving technology tailored to women.

78.    Edgewell's subsequent statements confirm that this process was intentional. Its women's shaving executives have explained that the company tests product concepts with

---

[42] https://www.prnewswire.com/news-releases/skin-care-begins-with-your-shave-new-schick-hydro-silk-razor-hydrates-skin-like-no-other-razor-135427533.html

consumers and refines color choices, packaging, naming, and claims based on those results.[43] Edgewell has further acknowledged that product appearance and shelf presentation materially influence purchasing decisions and that women's preferences are shaped not only by shaving performance, but also by whether a razor appears feminine, attractive, premium, and specifically responsive to women's concerns.[44] Thus, Edgewell was aware that women value products represented as specially designed for their bodies and skin, and it intentionally constructed the Hydro Silk product story to capture that demand.

79.    Edgewell's knowledge may also be inferred from the contrast between its internal consumer-driven design process and the objective characteristics of the products. Edgewell knew precisely which perceived distinctions it was communicating because it researched women's beliefs, tested the concepts, and intentionally refined the products' colors, shapes, packaging, names, and claims to reinforce those beliefs. If the asserted women-specific benefits were not materially supported by corresponding functional differences, Edgewell was uniquely positioned to know that fact because it designed and manufactured both the women's and men's products and possessed exclusive knowledge of their engineering, formulation, performance testing, costs, and intended functions.

## PLAINTIFF'S FACTS

80.    Plaintiff is a resident of Bronx, New York who has purchased the Women's Razors on multiple occasions, including as recently as March 31, 2026 when she purchased Schick Hydro Silk 3-blade cartridges. Plaintiff has purchased the Women's Razors from various retailers, including CVS Pharmacy in New Rochelle, New York.

---

[43] *Id.*
[44] *Id.*

81. When purchasing the Women's Razors, Plaintiff reviewed the Women's Razors' packaging which contained representations that the product contained features that were designed, among other things, to uniquely address a woman's shaving needs by protecting sensitive skin and preventing irritation when shaving the legs, underarms, and/or bikini area. Plaintiff understood these representations to mean that the Women's Razors were specifically engineered to women's bodies and women's specific shaving needs.

82. Plaintiff was unaware that the Men's Razors manufactured and sold by Edgewell contained features that were substantially similar, if not functionally identical, to those advertised in the Women's Razors she ultimately purchased.

83. Had Plaintiff known the specific packaging representations she relied upon were false—that is, that no feature of the Women's Razors is exclusive to or superior in the Women's product relative to the Men's Razor-- she would not have purchased the Women's Razor at the price charged, or would have considered purchasing the Men's Razor at its lower price.

84. Plaintiff would like to purchase the Women's Razors again, but Plaintiff cannot rely on the truthfulness of Edgewell's pricing and marketing absent injunctive relief, including adjustment of the Women's Razors' retail price.

85. As a result of Edgewell's deceptive and unfair practices, Plaintiff sustained economic injury by paying a price premium for the Women's Razors based on Edgewell's false, deceptive, or misleading representations that the Women's Razors contained features uniquely designed and engineered for women and their shaving needs.

### FED. R. CIV. P. 9(b) ALLEGATIONS

86. Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

Although Defendants are in the best position to know its representations, omissions, and the truth about the Women's Razors during the relevant time period, Plaintiff satisfies the requirements of Rule 9(b) by alleging the following with particularity:

87.    **WHO:** Defendants made material misrepresentations and/or omissions of fact by and through marketing and advertising, labeling, third-party merchants, websites, and product packaging.

88.    **WHAT:** Defendants made the specific material misrepresentations on the packaging of the Women's Razors and in the products' uniform advertising and marketing as detailed in the body of the complaint, including, *inter alia*: (a) that the product's "Curve-Sensing Blades" represent a women-specific blade engineering feature; (b) that the product's "Slimmer Design" is a women-specific engineering feature designed for women's bodies; (c) that the Women's Razors are designed to provide superior results when shaving legs, underarms, bikini, and other areas specific to a woman's body; and (c) that the product's "Skin Guards" are a unique feature designed specifically for women's skin. Each of these representations is false: the Men's Razors contain a materially equivalent feature in each instance. Defendants further omitted from all packaging and marketing the material fact that no engineering, material, or functional feature of the Women's Razor is absent from the Men's Razor.

89.    **WHERE:** Defendants' material misrepresentations and/or omissions were made in their marketing and advertising materials, their website, on the packaging of the Women's Razors, and through third-party merchants.

90.    **WHEN:** Defendants made the material misrepresentations and/or omissions detailed herein at all times relevant, including when Plaintiff and Class Members purchased the Women's Razors and throughout the applicable Class Periods.

91.    **WHY:** Defendants engaged in material misrepresentations and/or omissions detailed herein for the express purpose of inducing Plaintiff, Class Members, and the consuming public into purchasing the Women's Razors for a higher price, and deterring the consuming public from investigating whether the Women's Razors had any additional features or functional differences which might justify a higher price than the corresponding Men's Razors.

92.    **HOW:** Defendants made affirmative representations and/or failed to disclose material facts regarding the Women's Razors across its uniform marketing and advertising, including the Women's Razors' packaging as described herein.

93.    **INJURY:** Plaintiff and Class Members purchased the Women's Razors when they otherwise would not have but for Defendants' misrepresentations and/or omissions and, alternatively, paid more for the Women's Razors than they would have absent Defendants' misrepresentations and/or omissions.

## CLASS ACTION ALLEGATIONS

94.    Plaintiff brings this action individually and as representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23, on behalf of herself and the members of the following proposed classes:

> **Nationwide Class:** During the fullest period allowed by law, all persons in the United States who purchased the Women's Razors within the applicable statute of limitations, for personal use and not resale, until the date notice is disseminated.

> **New York Class:** During the fullest period allowed by law, all persons in the state of New York who purchased the Women's Razors within the applicable statute of limitations, for personal use and not resale, until the date notice is disseminated.

> **Multi-State Consumer Protection Class:** During the fullest period allowed by law, all persons who purchased the Women's Razors in New York and any state with

similar laws[45] within the applicable statute of limitations for personal use and not resale, until the date notice is disseminated.

95.     Specifically excluded from these definitions are: (1) Defendants, any entity in which Defendants have a controlling interest, and their legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; (3) Class Counsel; and (4) persons who properly execute and file a timely request for exclusion from the Classes. Plaintiff reserves the right to amend the Class definitions as necessary.

96.     **Numerosity:** The Members of the Classes are so numerous that joinder of all members is impracticable. While the exact number of Class Members is presently unknown, it likely consists of at least hundreds of thousands of people throughout the United States. The number of Class Members can be determined by sales information and other records in the possession of Defendants and their retail partners. Moreover, joinder of all potential Class

---

[45] While discovery may alter the following, Plaintiff asserts that the other states with similar consumer fraud laws under the facts of this case include, but are not limited to: Arkansas (Ark. Code § 4-88-101, *et seq.*); Colorado (Colo. Rev. Stat. § 6-1-101, *et seq.*); Connecticut (Conn. Gen. Stat. § 42-110, *et seq.*); Delaware (Del. Code tit. 6, § 2511, *et seq.*); District of Columbia (D.C. Code § 28-3901, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Hawaii (Haw. Rev. Stat. § 480-1, *et seq.*); Idaho (Idaho Code § 48-601, *et seq.*); Illinois (815 ICLS § 505/1, *et seq.*); Maine (Me. Rev. Stat. tit. 5 § 205-A, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); Montana (Mo. Code. § 30-14-101, *et seq.*); Nebraska (Neb. Rev. Stat. § 59 1601, *et seq.*); Nevada (Nev. Rev. Stat. § 598.0915, *et seq.*); New Hampshire (N.H. Rev. Stat. § 358-A:1, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New Mexico (N.M. Stat. § 57-12-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349, *et seq.*); North Dakota (N.D. Cent. Code § 51-15-01, *et seq.*); Oklahoma (Okla. Stat. tit. 15, § 751, *et seq.*); Oregon (Or. Rev. Stat. § 646.605, *et seq.*); Rhode Island (R.I. Gen. Laws § 6-13.1-1, *et seq.*); South Dakota (S.D. Code Laws § 37-24-1, *et seq.*); Texas (Tex. Bus. & Com. Code § 17.41, *et seq.*); Virginia (VA Code § 59.1-196, *et seq.*); Vermont (Vt. Stat. tit. 9, § 2451, *et seq.*); Washington (Wash. Rev. Code § 19.86.010, *et seq.*); West Virginia (W. Va. Code § 46A-6- 101, *et seq.*); and Wisconsin (Wis. Stat. § 100.18, *et seq.*). *See Mullins v. Direct Digital, LLC*, No. 13-cv-1829, 2014 WL 5461903 (N.D. Ill. Sept. 30, 2014), *aff'd*, 795 F.3d 654 (7th Cir. 2015).

Members is not practicable given their numbers and geographic diversity. The Classes are readily identifiable from information and records in the possession of Defendants.

97.    **Typicality:** The claims of the representative Plaintiff are typical in that Plaintiff, like all Class Members, paid a price premium for the Class Products based on Defendants' false, deceptive, misleading, or otherwise unlawful representations. Plaintiff, like all Class Members, has been damaged by Defendants' misconduct in that, *inter alia*, they have incurred or will continue to incur damage as a result of overpaying for the Class Products due to Defendants' business practices. Furthermore, the factual basis of Defendants' misconduct is common to all Class Members because Defendants have engaged in systematic unlawful behavior that was deliberate and resulted in the same injury to all Class Members.

98.    **Commonality:** Common questions of law and fact exist as to all Members of the Classes. These questions predominate over questions that may affect only individual Class Members because Defendants have acted on grounds generally applicable to the Classes. Such common legal or factual questions include, *inter alia*:

   a) Whether Defendants designed and/or manufactured the Women's Razors;

   b) Whether Defendants designed and/or manufactured the Men's Razors;

   c) Whether Defendants created, designed, reviewed, and/or approved the marketing of the Women's Razors, including the products' names and labeling;

   d) Whether there are any substantial differences in the design of the Women's Razors and Men's Razors;

   e) Whether the Women's Razors have any benefits which are not present in the corresponding Men's Razors;

   f) Whether there are any substantial differences in the materials used to manufacture the Women's Razors and the Men's Razors;

   g) Whether there are any substantial difficulties in the manufacturing process of the Women's Razors versus the Men's Razors;

h) Whether there are any differences in the cost of manufacturing the Women's Razors versus the Men's Razors;

i) Whether there are any differences in the supplier side or transportation costs in designing or manufacturing the Women's Razors versus the Men's Razors;

j) Whether there is any gender-neutral reason for charging a higher price for the Women's Razors than the Men's Razors;

k) Whether Defendants exercise control over retail pricing through MSRP policies, MAP policies, pricing monitoring, authorized reseller agreements, and/or wholesale pricing;

l) Whether Defendants created pricing requirements for their authorized retailers that resulted in consumers being charged a uniformly higher price for the Women's Razors than the Men's Razors;

m) Whether Defendants profited from the pricing differentials in the Women's Razors;

n) Whether Defendants misrepresented the Women's Razors as having qualities specific to women;

o) Whether Defendants omitted material information regarding the differences, and lack thereof, when it marketed the Women's Razors;

p) Whether Defendants' business practices constitute an unfair practice under New York law and similar states' laws;

q) Whether Plaintiff and Class Members suffered legally cognizable damages as a result of Defendants' misconduct; and

r) Whether Plaintiff and Class Members are entitled to damages, treble damages, civil penalties, punitive damages, and/or injunctive relief.

99. **Adequate Representation:** Plaintiff will fairly and adequately protect the interests of Class Members. She has no interests antagonistic to those of Class Members. Plaintiff retained attorneys experienced in the prosecution of class actions, including those alleging unfair and deceptive trade practices, and Plaintiff intends to prosecute this action vigorously.

100. **Injunctive/Declaratory Relief:** The elements of Rule 23(b)(2) are met. Defendants will continue to commit the unlawful practices alleged herein, and Plaintiff and Class Members will continue to be harmed by Defendants' unlawful practices. Defendants have acted and refused

to act on grounds that apply generally to the Classes, such that final injunctive relief, public injunctive relief, and corresponding declaratory relief are appropriate respecting the Classes as a whole. Injunctive relief, and specifically public injunctive relief, is necessary in this action.

101. **Predominance and Superiority:** Plaintiff and Class Members have all suffered and will continue to suffer risk of harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high given the average price point of the razors and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

102. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

103. Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes appropriate.

**COUNT I**
**Violations of New York General Business Law § 349**
**Deceptive Acts and Practices**
**(On Behalf of Plaintiff and the New York Class)**

104.    Plaintiff brings this count on behalf of the New York Class and repeats and re-alleges all previous paragraphs as if fully included herein.

105.    N.Y. Gen. Bus. Law § 349(a) prohibits deceptive acts or unlawful business practices in commerce.

106.    In its sale of goods throughout New York, Defendants conduct business and trade within the meaning and intention of N.Y. Gen. Bus. Law § 349.

107.    The foregoing deceptive acts and practices were directed at Plaintiff and other New York Class members.

108.    Defendants' deceptive conduct was directed at consumers and had a broad impact on consumers at large.

109.    On the Women's Razors packaging and throughout Defendants' uniform marketing representations, Defendants affirmatively represent that the Women's Razors contain a "Slimmer Design" that is "Ideal for Bikini and Underarm Zones," and "Curve Sensing Blades," in addition to other representations designed to convince reasonable consumers that the Women's Razors are designed to provide benefits which render them superior for women's bodies and their shaving needs.

110.    Defendants marketed the Women's Razors with package representations implying women-specific engineering while omitting that those features are equally present in Defendants' lower-priced Men's Razors.

111.    New York General Business Law § 391-u(2) provides that "no business shall charge a higher price for goods of a substantially similar or like kind based on the gender of the individual for whom the goods are intended." While § 391-u(2) does not provide a private right of action for consumers, the statute evidences the legislature's intent to prohibit pricing practices that

charge more for products marketed to one gender where there is no substantive difference from the same product not marketed to that gender.

112. Defendants' conduct—marketing the Women's Razors with packaging representations implying women-specific engineering while omitting that those features are equally present in the lower-priced Men's Razors—constitutes the precise conduct § 391-u was enacted to prohibit. Such conduct violates established New York public policy and, independently, constitutes a deceptive act or practice under N.Y. Gen. Bus. Law § 349, which broadly prohibits conduct that offends public policy as established by the laws of the State of New York.

113. Defendants' practices alleged herein, namely marketing Women's Razors as having qualities specific for women and charging more for the Men's Razors, when the Women's Razors have no substantive differences than the Men's Razors is a violation of N.Y. Gen. Bus. Law § 349.

114. Defendants foregoing deceptive acts and practices were directed toward Plaintiff and Class Members.

115. Defendants' deceptive acts and practices, including its representations and omissions, were material, in part, because they concerned an essential part of the Women's Razors' marketing as being designed and manufactured for use by women and women were charged more for this purchase. Defendants omitted material facts that there was no material difference warranting an increased price of the Women's Razors. A reasonable consumer attaches great importance to such representations about such marketing and associated pricing.

116. Defendants failed to disclose that the Women's Razors had no material differences that would warrant an increased price as compared to the Men's Razors.

117. Defendants' foregoing deceptive and unfair practices include material misrepresentations and omissions and were deceptive acts or practices violated N.Y. Gen. Bus. Law § 349 by:

    a. Misrepresenting that the Women's Razors contained features designed specifically for women's bodies and their shaving needs, and that such design and manufacture warrants the price being charged; and

    b. Omitting that there are no material differences between the Women's Razors and Men's Razors while charging a higher price for the Women's Razors.

118. Defendants' practices, in manufacturing, advertising, marketing and selling its Women's Razors while concealing, failing to disclose, suppressing or omitting material information, including that there is no justification for pricing the Women's Razors higher than the Men's Razors, constitutes the use of fraud, misrepresentation, and deceptive practices.

119. These practices deceived Plaintiff and New York Class Members, causing them to pay more than they otherwise would or should, as herein alleged, and deceived and are likely to deceive the consuming public. Accordingly, Defendants' business acts and practices, as alleged herein, have caused injury to Plaintiff and New York Class Members.

120. Plaintiff and Class Members would not have purchased the Women's Razors, or would not paid the same price for the Women's Razors, had they known that higher priced product was substantially similar to the Men's Razors.

121. As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff and New York Class Members have suffered economic injury by paying a price premium for a substantially similar product.

122. N.Y. Gen. Bus. Law § 349(h) provides a private right of action allowing injured consumers to recover actual damages or statutory damages of $50, whichever is greater, along with attorneys' fees.

123. Plaintiff and New York Class Members are entitled to actual damages, statutory damages, treble damages up to $1,000 per consumer, attorneys' fees, and injunctive relief as provided under N.Y. Gen. Bus. Law § 349.

## COUNT II
### Violations of New York General Business Law § 350
### False Advertising
### (On Behalf of Plaintiff and the New York Class)

124. Plaintiff brings this count on behalf of the New York Class and repeats and re-alleges all previous paragraphs as if fully included herein.

125. N.Y. Gen. Bus. Law § 350 prohibits false or misleading advertising.

126. In turn, GBL § 350-a defines false advertising as:

"advertising, including labeling, of a commodity...if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity...to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual."

127. The Women's Razors are marketed in a manner that falsely suggests they contain features and/or components that are specifically designed or engineered for women's bodies.

128. This marketing and related omissions, described herein, constitutes false and misleading advertising under N.Y. Gen. Bus. Law § 350.

129. Defendants' false advertising was directed at consumers and had a broad impact on consumers at large.

130. Defendants' misrepresentations and omissions regarding the Women's Razors are material to a reasonable consumer.

131. Plaintiff and the New York Class members were induced to purchase the Women's Razors by Defendants' misrepresentations and omissions in and on their packaging, advertising, and marketing.

132. As a result of Defendants' false advertising, Plaintiff and New York Class Members have suffered economic injury by paying a price premium based on misleading representations.

133. N.Y. Gen. Bus. Law § 350-e provides a private right of action for injured consumers.

134. Plaintiff and New York Class Members are entitled to actual damages, statutory damages, treble damages, attorneys' fees, and injunctive relief as provided under N.Y. Gen. Bus. Law § 350.

## COUNT III
### Violation of State Consumer Protection Statutes
**(On Behalf of Plaintiff and the Multi-State Consumer Protection Class)**

135. Plaintiff brings this count on behalf of the Multi-State Consumer Protection Class and repeats and re-alleges all previous paragraphs as if fully included herein.

136. Plaintiff and Multi-State Consumer Protection Class Members have been injured as a result of Defendants' violations of the state consumer protection statutes listed above in paragraph 94 and footnote 45, which also provide a basis for redress to Plaintiff and Multi-State Consumer Protection Class Members based on Defendants' fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

137. Defendants' conduct as alleged herein violates the consumer protection, unfair trade practices and deceptive acts laws of each of the jurisdictions encompassing the Multi-State Consumer Protection Class.

138.    Defendants violated the Multi-State Consumer Protection Class states' unfair and deceptive acts and practices laws by deceptively marketing the Women's Razors in a manner that suggests they contain features and/or components that are uniquely designed or engineered for women's bodies.

139.    Defendants' misrepresentations and omissions were material to Plaintiff's and Multi-State Consumer Protection Class Members' decisions to purchase the Women's Razors or pay a premium for them.

140.    Defendants made the untrue and/or misleading statements and representations, while omitting material information, willfully, wantonly, and with reckless disregard for the truth.

141.    As a result of Defendants' violations of the aforementioned states' unfair and deceptive practices laws, Plaintiff and Multi-State Consumer Protection Class Members purchased and paid a price premium for the Women's Razors that did not conform to their promotion, marketing, advertising, packaging, and labeling.

142.    Plaintiff and Multi-State Consumer Protection Class Members paid a price premium solely because the Women's Razors were marketed as having unique features designed or engineered specifically for women's bodies. Accordingly, Plaintiff and Multi-State Consumer Protection Class Members were deprived of the benefit of their bargain and spent money on the Women's Razors that did not have any value or had less value than warranted or Women's Razors that they would not have purchased had they known the true facts about them.

143.    As a result of Defendants' violations, Defendants have been unjustly enriched.

144.    Pursuant to the aforementioned States' unfair and deceptive practices laws, Plaintiff and Multi-State Consumer Protection Class Members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages,

reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

## COUNT IV
### Unjust Enrichment/Quasi-Contract
**(On Behalf of Plaintiff and the Nationwide Class or, in the alternative, the New York Class)**

145. Plaintiff brings this count on behalf of the Nationwide Class and repeats and re-alleges all previous paragraphs as if fully included herein.

146. To the extent that the foregoing statutory claims under New York law do not provide a complete remedy, Plaintiff pleads this claim in the alternative.

147. Defendants were unjustly enriched by charging consumers higher prices for substantially similar products based on gender.

148. Plaintiff and Nationwide Class Members conferred a benefit upon Defendants by paying a price premium for the Women's Razors.

149. Defendants have knowledge and appreciation of the benefit conferred upon them.

150. Under the circumstances, it would be inequitable for Defendants to retain the benefit without payment of its value to Plaintiff and Nationwide Class Members.

151. Plaintiff and Nationwide Class Members suffered economic loss equal to the price premium paid.

152. Plaintiff and Nationwide Class Members are entitled to restitution and disgorgement of Defendants' ill-gotten gains.

## COUNT V
### Fraudulent Misrepresentation
**(On Behalf of Plaintiff and the Nationwide Class or, in the alternative, the New York Class)**

153. Plaintiff brings this count on behalf of the Nationwide Class and repeats and re-alleges all previous paragraphs as if fully included herein.

154.    Beginning at a date currently unknown and continuing to the time of the filing of this Complaint, Defendants knowingly represented to Plaintiff and others similarly situated, through their product labeling and marketing practices, that the Women's Razors were specifically engineered for women's bodies.

155.    Defendants acted intentionally by willfully and purposefully employing marketing intended to mislead reasonable consumers into believing the Women's Razors had features designed to provide benefits for women's bodies when, in reality, those features were not unique to the Women's Razors.

156.    However, as described above, these representations are false, unfair, deceptive and/or misleading.

157.    Defendants, as designer and manufacturer of the Hydro Products, knew such representations were false and yet continued over a period of years to charge a price premium for the Women's Razors based solely on the fact that they were marketed to women.

158.    Defendants also knew that third-party retailers were advertising the Women's Razors in false, unfair, deceptive, and/or misleading ways, including by separating them from the functionally identical Men's Razors in retail stores to avoid any direct comparison by consumers. Likewise, Defendants designed, manufactured, and affixed the labeling to the Women's Razors before supplying it to the retailers.

159.    Defendants omitted, concealed, and failed to disclose to Plaintiff and Class Members that the Women's Razors did not contain any material differences in design or manufacture that would have warranted pricing those products higher than Men's Razors. Rather than disclose this information, Defendants marketed the Women's Razors as though they possessed qualities specifically beneficial to women, when they did not.

160.    Plaintiff and the putative Class members saw, believed, and relied upon Defendants' representations and related omissions in making the decision to purchase the Women's Razors.

161.    As a proximate result of Defendants' intentional misrepresentations and omissions, Plaintiff and the putative Class members were damaged in an amount to be determined at trial.

162.    By engaging in the acts described above, Plaintiff and the putative Class are therefore entitled to recover exemplary or punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, respectfully requests that this Court:

A. Certify the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B. Name Plaintiff as Class Representative of the Classes;

C. Name Plaintiff's counsel as Class Counsel for the Classes;

D. Award actual damages to Plaintiff and the Classes in an amount to be determined at trial;

E. Award statutory damages to Plaintiff and the Classes as provided under New York General Business Law;

G. Award treble damages to Plaintiffs and the Classes as provided under New York General Business Law;

H. Permanently enjoin Defendants from engaging in the wrongful and unlawful conduct alleged herein;

I. Award Plaintiff and the Classes their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

J. Award Plaintiff and the Classes pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

K. Award such further relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


DATED:  August 3, 2026    Respectfully submitted,

              /s/ Mitchell Breit_____
             Mitchell Breit
             **MILBERG LLC**
             405 East 50th Street
             New York, New York 10022
             (202) 932-7081
             mbreit@milberg.com

             **LEE SEGUI, PLLC**
             Erin J. Ruben
             Thomas Pacheco*
             900 W. Morgan Street
             Raleigh, NC 27603
             eruben@leesegui.com
             tpacheco@leesegui.com

             Harper T. Segui*
             825 Lowcountry Blvd., Suite 101
             Mt. Pleasant, SC 29464
             hsegui@leesegui.com

             ***Attorneys for Plaintiffs and the Class***

             * Applications for Admission *Pro Hac Vice*
             forthcoming